UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TAMMI LYNN DRUST,

    Plaintiff,

v.                                                                             Case No. 1:20-cv-464
                                                                           Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) with respect to her application for disability insurance benefits (DIB).

        Plaintiff filed an application for DIB on February 15, 2017, alleging a disability onset date of September 30, 2015, the date she suffered injuries in a motor vehicle accident (sometimes referred to as "MVA"). PageID.85, 89. Plaintiff identified her disabling conditions as: "acute neck pain r/t MVA with upper extremity radiculopathy;" anterior cervical decompression with cage C5-6 and C6-7; pain in left paracervical junction with radiation; anxiety and depression disorder; loss of reflexes; weakness; foraminal stenosis C4-C5; facet degenerative changes C2-C3; asthma; L3-4 disc bulge; and, L4-5 disc bulge. PageID.289. Prior to applying for DIB, plaintiff completed two years of college and had past employment as a licensed practical nurse (LPN) and dialysis technician. PageID.93-94, 291. An ALJ reviewed plaintiff's application de novo and entered a written decision on April 2, 2019. PageID.85-102. The ALJ found that

1

plaintiff had a closed period of disability: (1) plaintiff was disabled under the Social Security Act from September 30, 2015, through December 14, 2017; (2) her disability ended on December 15, 2017; and (3) plaintiff was not disabled from December 15, 2017 through the date of the decision, April 2, 2019. PageID.101-102. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

### I.  LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.     ALJ's DECISION

At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date of September 30, 2015, and met the insured status requirements of the Social Security Act through December 31, 2020.  PageID.89.  The ALJ made separate findings at steps two through five to address the closed period of disability and plaintiff's condition after the disability ended on December 15, 2017.

### A.     Closed period of disability

At the second step, the ALJ found that from September 30, 2015, through December 14, 2017, plaintiff had severe impairments of: degenerative disc disease of the cervical spine, status post cervical fusion; left cervical radiculopathy; left ulnar neuropathy; left carpal tunnel syndrome on EMG; history of brachial plexopathy on EMG; lumbar spondylosis; asthma; depression; anxiety; and post traumatic stress disorder (PTSD).  PageID.89.

At the third step, the ALJ found that from September 30, 2015, through December 14, 2017, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  PageID.89.

At the fourth step, the ALJ found that:

> After careful consideration of the entire record, I find that, from September 30, 2015, through December 14, 2017, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that the claimant could never reach overhead with the left upper extremity; occasionally reach in all other directions with the left upper extremity; and occasionally handle and finger with the left upper extremity. Lifting and carrying was limited to no more than 5 pounds independently with the left upper extremity. The claimant could never climb ladders or scaffolds and could occasionally crawl. The work must have allowed for the exercise of a sit/stand option, which I define as follows: there must have been work that could be done in both the sitting and standing positions, such that the change in position would not cause the worker to go off task. After sitting for 30 minutes, the worker should have had the option to stand for up to 10 minutes; after standing for 10 minutes, the worker should have had the option to sit for up to 30 minutes. The claimant must have avoided even moderate exposure to vibration

>and concentrated exposure to pulmonary irritants. The work should have been limited to simple, repetitive unskilled tasks at SVP 1 or 2 as defined in the Dictionary of Occupational Titles (DOT), free of fast paced production requirements, with few, if any, workplace changes. The claimant would require breaks in addition to regularly scheduled breaks and would be off task 20% of the day in addition to regularly scheduled breaks. The claimant would have been expected to miss at least 3 days per month. The claimant would be unable to sustain a full time work schedule at any occupation during the period.

PageID.90. The ALJ also found that during this time period, plaintiff was unable to perform any past relevant work. PageID.93.

At the fifth step, the ALJ found that from September 30, 2015, through December 14, 2017, considering plaintiff's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that she could have performed. Accordingly, the ALJ found that plaintiff was under a disability, as defined by the Social Security Act, from September 30, 2015, through December 14, 2017. PageID.95.

### B.      Plaintiff's disability ended on December 15, 2017

At the second step, the ALJ found that plaintiff has not developed any new impairment or impairments since December 15, 2017, the date her disability ended. "Thus, since December 15, 2017, the claimant has the following severe impairments: degenerative disc disease of the cervical spine, status post cervical fusion; left cervical radiculopathy; left ulnar neuropathy; history of left carpal tunnel syndrome; history of left brachial plexopathy; lumbar spondylosis; asthma; depression; anxiety; and PTSD." PageID.95.

At the third step, the ALJ found that beginning December 15, 2017, plaintiff has not had an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.95.

At the fourth step, the ALJ found that medical improvement occurred as of December 15, 2017, stating:

> The claimant has recovered from surgery. Her fusion is stable and in good position. Electrodiagnostic testing is now negative. Objective findings no longer support the degree of incapacity alleged, nor are they consistent with total disability. Subsequently, there has been an increase in the claimant's residual functional capacity.

PageID.97. The ALJ found that "[t]he medical improvement that has occurred is related to the ability to work because there has been an increase in the claimant's residual functional capacity (20 CFR 404.1594(b)(4)(i))." PageID.97. "In comparing the claimant's residual functional capacity for the period during which she was disabled with the residual functional capacity beginning December 15, 2017, I find that the claimant's functional capacity for basic work activities has increased." PageID.97.

In this regard, the ALJ found that:

> After careful consideration of the entire record, I find that, beginning December 15, 2017, the claimant has had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that the claimant can never reach overhead with the left upper extremity; occasionally reach in all other directions with the left upper extremity; and occasionally handle and finger with the left upper extremity. Lifting and carrying is limited to no more than 5 pounds independently with the left upper extremity. The claimant can never climb ladders or scaffolds and can occasionally crawl. The work must allow for the exercise of a sit/stand option, which I define as follows: there must be work that can be done in both the sitting and standing positions, such that the change in position will not cause the worker to go off task. After sitting for 30 minutes, the worker should have the option to stand for up to 10 minutes; after standing for 10 minutes, the worker should have the option to sit for up to 30 minutes. The claimant must avoid even moderate exposure to vibration and concentrated exposure to pulmonary irritants. The work should be limited to simple, repetitive unskilled tasks at SVP 1 or 2 as defined in the Dictionary of Occupational Titles (DOT), free of fast paced production requirements, with few, if any, workplace changes.

PageID.97. The ALJ also found that plaintiff is unable to perform her past relevant work. PageID.100.

At the fifth step, the ALJ found that plaintiff could perform a significant number of unskilled jobs at the sedentary exertional level. PageID.101. Specifically, the ALJ found that

6

plaintiff could perform the requirements of unskilled sedentary work in the national economy such as information clerk (160,000 jobs) and inspector (130,000 jobs).  PageID.101.  Accordingly, the ALJ determined that plaintiff's disability ended on December 15, 2017, and she has not become disabled again through April 2, 2019 (the date of the decision).  PageID.101-102.

### III. DISCUSSION

Plaintiff has raised three errors on appeal.

#### A. The ALJ committed reversible error by not choosing an accurate date for the alleged end of plaintiff's period of disability.

Plaintiff contends that the ALJ chose an inaccurate date for medical improvement and the end of her disability.  On December 14, 2017 – the last date of plaintiff's disability – plaintiff underwent an EMG.  *See* Plaintiff's Brief (ECF No. 14, PageID.869).  The ALJ noted that the report of nerve conduction studies performed on that date "reveals that the findings were not indicative of carpal tunnel syndrome and were essentially normal (Exhibit 12F/22-24)". PageID.97. Plaintiff contends that the conclusion seems "highly suspect" since she never underwent surgery for carpal tunnel syndrome and never received treatment for this condition. Plaintiff's Brief at PageID.870.

The Court construes plaintiff's claim as "closed period case," *i.e.*, one in which the ALJ determines that the claimant was disabled for a specific period of time that commenced and ended prior to the date of the ALJ's decision.  *See, e.g., Pickett v. Bowen*, 833 F.2d 288, 289 n. 1 (11th Cir. 1987).  The medical improvement standard in 20 C.F.R. § 404.1594 applies to closed period cases.  *See Shepherd v. Apfel*, 184 F.3d 1196, 1198, 1200 (10th Cir.1999); *Long v. Secretary of Health and Human Services*, No. 93-2321, 1994 WL 718540 at *2 (6th Cir. Dec.27, 1994) ("In order to find a closed period of disability, the Secretary must find that at some point in the past,

the claimant was disabled and that, at some later point in the past, he improved to the point of no longer being disabled"); *Jones v. Shalala*, 10 F.3d 522, 524 (7th Cir.1993). "Medical improvement" is defined in 20 C.F.R. § 404.1594(b)(1) as follows:

> Medical improvement is any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s) . . .
>
> The Court recognizes the difficulty in establishing such a date.
>
> As the Sixth Circuit has recognized, an ALJ's decision regarding the date on which a claimant's disability ended need not be supported by "smoking gun medical documents" generated on the date in question. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 285 (6th Cir. 2009). Instead, the ALJ's determination as to the date on which a claimant's disability ended must simply be "not so wholly arbitrary so as to carry the ALJ's decision outside the 'zone of choice' that the ALJ possesses in rendering disability decisions." *Id*.

*Valencia v. Commissioner of Social Security*, 216 F. Supp. 3d 835, 839 (W.D. Mich. 2016).

Here, the decision refers to a "smoking gun" of sorts, *i.e.*, the ALJ found that on December 14, 2017, plaintiff's nerve conduction findings were "essentially normal" and not indicative of carpal tunnel syndrome. PageID.97. This finding, however, is not supported by substantial evidence. The findings cited by the ALJ (Exh. 12F/22-24) consist of raw medical data. PageID.780-782. The ALJ cannot interpret this data to establish medical improvement. *See Deskin v. Commissioner of Social Security*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008). ("In making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms.").

The record reflects that plaintiff continued to have treatment for her injuries before and after the medical improvement date of December 14, 2017. The last medical treatment cited before the medical improvement date is a "follow-up on displacement of cervical intervertebral

disc without myelopathy" with Norton Family Practice on June 7, 2017.  PageID.92.  The last consultative psychological examination cited before the medical improvement date is an opinion from Allison Bush and Dennis L. Mulder, Ed.D. dated June 26, 2017.  PageID.93.  Based on the medical history set forth in the ALJ's decision, plaintiff had no medical treatment for the six months preceding the medical improvement date.

However, the record also reflects that plaintiff had significant medical treatment for her injuries after the medical improvement date.  On March 16, 2018, and June 18, 2018, plaintiff saw orthopedic specialists for chronic pain.  PageID.98.  In May and June, 2018, plaintiff sought treatment for a major depressive disorder and PTSD.  *Id*.  From April 12, 2018, through July 27, 2018, plaintiff received treatment for cervical disc prolapse, anxiety, and COPD.  *Id*.  Plaintiff also had treatment in October 2018, reporting cervical pain for chronic pain and whiplash.  *Id*.  Plaintiff had a chronic PTSD diagnosis with a single episode of moderate major depressive disorder on October 29, 2018.  PageID.99.  Plaintiff also submitted records of treatment from December 20, 2017, through November 9, 2018, with James Twesten-O'Toole, M.D., for cervical disc prolapse, anxiety, and asthma.  PageID.99, 807-852.

The question for the Court is whether the ALJ's finding that plaintiff's medical improvement date was not so "wholly arbitrary" so as to fall outside the ALJ's zone of choice.  *Valencia*, 216 F. Supp. 3d at 839.  On balance, the Court concludes that the medical improvement date of December 14, 2018, fell outside of the ALJ's zone of choice.  After that date, the only change in plaintiff's condition, based on her severe impairments, was that her "left carpal tunnel syndrome on EMG" had improved to "history of left carpal tunnel syndrome."  PageID.89, 95.  The medical records reflect that plaintiff continued to seek treatment related to her other severe impairments through November 2018.

9

The ALJ's finding that medical improvement occurred on December 14, 2017, is not supported by substantial evidence. Accordingly, this matter will be reversed and remanded pursuant to sentence four of § 405(g) for a re-evaluation of whether plaintiff experienced medical improvement and if so, when that improvement occurred.

### B. The ALJ committed reversible error by failing to properly consider the opinion of plaintiff's treating physician.

Because plaintiff filed her application before March 27, 2017, the "treating physician rule" applies to the ALJ's decision. *See* 20 C.F.R. § 404.1527. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

The ALJ summarized Dr. Twesten-O'Toole's opinions as follows:

> As for the opinion evidence, on [sic] Dr. Twesten-O'Toole provided a sworn statement on December 11, 2018. In describing significant problems of the claimant's that he has treated, he testified that the claimant has had persistent neck

10

> pain and physical dysfunction since her automobile accident on September 30, 2015. Indicating that ever since that time, she has reported serve [sic] persistent posterior neck pain with radiation extension down her left shoulder, into her left arm, as well as left arm numbness, tingling, and weakness. Dr. Twesten- O'Toole added that at various times she also reported some leg weakness as well (Exhibit 13F/3-4). Dr. Twesten-O'Toole also testified that the claimant has had significant anxiety and depression since the automobile accident, noting that she has frequently presented with an anxious and tearful affect. He further noted that she has been involved with behavioral health who has diagnosed her with PTSD directly related to the automobile accident, as well as major depressive disorder (Exhibit 13F/4). With respect to her cervical spine surgery, Dr. Twesten-O'Toole testified that she did not have a significant response in terms of her symptomatic complaints (*Id.*). Dr. Twesten-O'Toole opined that he thinks that it is very unlikely that the claimant has the ability to engage in any type of gainful full-time sustained employment on an eight-hour-a-day, five-day-a-week basis (Exhibit 13F/8). In support of his opinion, he indicated that the claimant has difficulty opening cans because of the grip strength and the forces that are involved. He also indicated that the claimant needs help with her daily grooming. That she cannot bring her arm up with any strength to brush her hair, or wash her hair. He further indicated that the claimant has reported that she sometimes needs assistance getting out of bed (Exhibit 13F/8-9). Finally, Dr. Twesten-O'Toole offered the following testimony:
>
>> "So I think if I were to try to picture her in even a mildly sedentary position, you know, such as maybe doing something clerical -- She and I even talked about using a computer and she says that she really can't do that because of the positioning that's involved and the hand skills. I think that she would require frequent position changes. I think that she would have possibly a hard time staying on task, either because of her -- you know, the previous night's sleep disturbances or some of the emotional concerns that she has going on. So in short, I think it would be very unlikely" (Exhibit 13F/9).

PageID.99-100.

The ALJ adopted some of these opinions:

> The opinion evidence provided by Dr. Twesten-O'Toole is given partial weight, as it is not entirely consistent with the record as a whole. There clinically has been significant improvement, even improvement in electrodiagnostic testing and upon objective radiological testing, after the closed period and as of the date of this opinion evidence.

PageID.100.  Based on this record, the ALJ did not give good reasons for the weight assigned to the doctor's opinion.  For reasons discussed, *supra*, the ALJ relied on his improper evaluation of

11

the raw data in the nerve conduction tests. In addition, the ALJ provided no explanation as to which portions of the doctor's opinion were "not entirely consistent with the record as a whole." Accordingly, this matter will be reversed and remanded pursuant to sentence four of § 405(g) for a re-evaluation of Dr. Testen-O'Toole's opinion.

### C. The ALJ committed reversible error by apparently assessing plaintiff's residual functional capacity (RFC) before considering her testimony.

Plaintiff contends that the ALJ relied on boilerplate language which indicates that the ALJ apparently assessed plaintiff's RFC before considering her testimony. The language appears as follows:

> After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

PageID.100. Plaintiff cited a Seventh Circuit decision referring to the language as "a pernicious bit of boilerplate to which the Social Security Administration clings," which raises the implication "that the assessment of the claimant's ability to work precedes and may invalidate the claimant's testimony about his or her ability to work." *Browning v. Colvin*, 766 F.3d 702, 707 (7th Cir. 2014). However, other than referencing *Browning*, plaintiff has failed to develop an argument on which to invalidate the ALJ's decision based on the use of this boilerplate sentence. "It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, this claim of error is denied.

## IV. CONCLUSION

Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to re-evaluate the opinion of Dr. Twesten-O'Toole and re-evaluate whether plaintiff experienced medical improvement and, if so, when the improvement occurred.


Dated: February 25, 2022  /s/ Ray Kent
RAY KENT
United States Magistrate Judge